Peck, J.
delivered the opinion of the Court; By the Act of 1777,-ch. 2, § 29, the Legislature enact “that all process that had before that time issued against goods and chattels, lands and tenements, shall in future issue in the same manner. And all process that before that time issued against goods and chattels only shall in future issue against lands and tenements, as well as goods and chattels, — the goods and chattels to be levied on first, if the defendant have any.”
CRább, J. absent.
Before the passage of this Act, a judgment, by construction of law, was held to bind the lands of the debtor. The delivery of the elegit to the officer, on a younger judgment, did not, therefore, postpone an elegit sued out and delivered [33] within a reasonable^ time upon an elder judgment. So far from it the elegit on the elder judgment (even though the land had been extended by virtue of the younger judgment) will extend the same land, and postpone the extent first made on the younger judgment. Coke Littleton, 289 B; 4 Reports, 66 B; Tulward’s case, Carthew, 255. And why? Not because the Statute contained any provision to that effect, but because the courts, in construing the Statute of Westminster 2, inclined to the side of the vigilant creditor.
By the Act of 1794, ch. 1, § 59, an execution may issue upon the judgment of any County Court to any other county in the State. This section, by the terms used, supposes that the debtor may have removed, or may *410 reside out of the jurisdiction where the judgment was obtained, or that he had property in some county other than that in which he resided.
It did not always happen that a defendant was arrested in the county where he resided. His person being liable to arrest wherever found, service'of the writ frequently took place in some other jurisdiction. Had the execution remained limited to the jurisdiction where the writ was executed, the judgment might have remained unavailing.
This provision naturally connects itself with that contained in the Act of 1799, ch. 14, recognizing the lien of judgments on lands, and limiting the duration of such lien to one year. The preamble to this Act contemplates an existing fact, viz.: that judgments and executions which had long been dormant disturbed rights honestly acquired, without a knowledge of their existence to the party disturbed.
Five years intervened between the passage of these Acts, and ■whatever evils were likely to arise from the long-continued binding effect of the judgment it is natural to suppose would have developed themselves in that time. In addition to the above consideration the County Court was a court of very general jurisdiction; it was a tribunal brought home to the citizen, less expensive and more frequent in its sittings than the District Court. These, with many other reasons, show why it should be resorted to in preference to the District Court, especially in such questions as arise between [34j the debtor and the creditor, — questions demanding expedition, and not, in general, involving much intricacy.
Resorting to construction from premises like these, it would seem as reasonable to construe our statute in favor of the oldest judgment creditor, to the extent contended for in this case, as to allow it on the statute giving the elegit.
The execution bj fi.fa. is only another method o'f obtaining the fruits of the judgment; the end of th e fieri facias and of the elegit being the same, the means should be the same; and, pursuing the analogy, we ought not to make the limit of the lien extend further back than to the delivery of the execution.
The maxim “ vigilantibus etnon dormientibus jura subvenient,” does and ought to apply in this case. And, in making the application to the judgment, we shall be strengthened by the fact before alluded to: that, although.the defendant be found and arrested by the creditor, no matter in what county, still the creditor may not know in what county the debtor’s estate is, so as to be immediately reached on obtaining the judgment.
When the Act of 1799, ch. 14, speaks of judgments and executions remaining dormant and working injury to innocent purchasers, it is reasonable to suppose it was intended of estates purchased out of the county where the judgment was obtained; for, if confined to the county alone, the injury spoken of in the Act could not have existed, because the records of the *411 Court were accessible to all who might desire to purchase. But if the lien extended to the land of the debtor, lying out of the county in which the judgment was obtained, then the mischief, &c. did exist; and to remedy this mischief that section of the Act was passed.
This construction is also aided by another provision of the Act of 1799, ch. 14, providing the length of tinle and public manner in which notice of the time and place of sale shall be given. As one reason for giving sixty days (a time more than sufficient to bring bidders together), may we not infer that it was in part designed to notify elder judgment creditors that they might present their executions, to the end, first, that the sale, when made, should [35] not be questioned; second, that the proceeds of the sale should be properly applied and paid to those entitled ?
I pause here to make an inquiry; why give, by construction, a binding effect to a judgment rendered in a District Court to half the bounds of the State; and limit the lien of a judgment rendered in a court of like jurisdiction, as to the matter adjudicated, to a single county? This, it seems to us, would be making an inequality, without sufficient reasons to justify it.
We are referred to cases determined in North Carolina, which are thought to stand opposed in principle to the position contended for by the plaintiff in error. Most of these we have examined. Stamps v. Erwine Green v. Johnson, Gilkey v. Dickerson, and Davidson v. Beard, in 2 Hawks Rep. These cases prove nothing against the positions assumed ; each case assumes it as law that an execution binds land from the test, and that an alias pursued after the return of the first execution binds from the test of the first execution. So of the cases in 3 Murphy’s Rep. Although in one of these cases there is a dictum that a fi. fa. on the judgment will not bind from the teste ; though, say the judges, had the elegit been sued out, the judgment would have been a lien, and this because the elegit is the process given by the statute. For as strong a reason the execution here ought, when delivered, to bind from the date of'the judgment, because it is the writ given by our act of Assembly.
But it is evident that the decisions in North Carolina can have very little to do in determining the question. It is a question depending on a sound construction of our acts of Assembly. How the law was understood to be under the Act of 1777 may be collected from the subsequent Acts; and our courts, when deliberately called upon, have, from various sources of reasoning and authority, determined uniformly in favor of the binding effect of the judgment, where the party, by bis own act, has not defeated his lien. Porter v. Cocke, Peck’s Reports.
We are therefore of opinion that the Circuit Court erred in ordering the money to be paid to the defendant in error. [36] Reverse the judgment, and let judgment be given in favor of the plaintiff in error.
Judgment reversed.